UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY JO PRATT # 522003,

       Petitioner,

                                           Case No.: 07-CV-15112

v.                                         Honorable George Caram Steeh

SUSAN DAVIS,

       Respondent.

_____/

OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS

## I.    Introduction

Petitioner Kelly Jo Pratt, a Michigan state prisoner, has filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pratt was convicted of armed robbery following a jury trial in Crawford County Circuit Court and was sentenced to four years and three months to 15 years imprisonment in 2004. She was released on parole in 2008. In her pleadings, Pratt raises issues concerning the sufficiency of evidence, the shackles and prison garb worn by a witness, and the effective assistance of counsel. Respondent, through the Michigan Attorney General's Office, filed an answer to the petition requesting that it be denied. For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

## II.    Facts and Procedural History

Pratt's conviction arises from a December 14, 2003 armed robbery at the BP Quick Save gas station in Frederic, Michigan. Store employee Alisha Phillips testified that at approximately 5:45

a.m. on December 14, 2003, just shortly after she began printing paperwork for her shift change, an armed assailant entered the store and approached the counter. The assailant, who was holding a small gun in his or her left hand, pointed the gun at her and demanded money. Ms. Phillips responded that she was printing a shift report and could not open the till until the report finished printing. After further complications, the assailant became very aggravated and threatened to shoot her if she did not turn over the money. When the printing was completed, Ms. Phillips removed the entire cash drawer and placed it on the counter. She was then instructed to back up, turn around, and lie down with her face to the floor. She complied and heard the assailant exit the store a short time later. Ms. Phillips eventually crawled to the backroom of the store, where she telephoned Dennis, the store's assistant manager, to inform him of what had happened. When Dennis arrived, he telephoned the police.

Ms. Phillips testified that the robber was wearing a gray hooded zip-up sweatshirt, blue jeans, black gloves, and a bright orange "hunting mask," which revealed only the robber's nose and eyes. Ms. Phillips described the robber as having green eyes and brown eyebrows and as being skinny, or possessing a small-build, with a slender face and small hands. She thought the robber was five-feet-five to five-feet-six inches tall. She said that she was able to assess the robber's height because she had stood just a few feet away and had looked directly into the robber's eyes.

Ms. Phillips observed in court that Pratt had green eyes, brown eyebrows, and a slender build and that those characteristics were consistent with those of the person who committed the robbery, but did not positively identify Pratt. Ms. Phillips unequivocally testified that Daniel Latesky, Pratt's boyfriend, could not have been the robber because he did not match the physical characteristics she had observed. Throughout her police statement, Ms. Phillips consistently referred to the robber as

2

"he" or "him," indicating that the robber was male.  At trial, when asked whether she could honestly say that whether the robber was male or female, she responded "no."  Ms. Phillips said that she was unable to use the robber's voice to gauge gender because the robber spoke in a very low-toned voice.

Several police officers also testified at trial.  Their testimony established that Pratt was apprehended when she and Latesky encountered a  police officer who had been looking for Latesky in relation to the armed robbery.  While in custody, Pratt told one of the officers that she was five-foot-six, weighed 100 pounds, was left-handed, and owned a gray hooded zip-up sweatshirt which did not fit Latesky.  Pratt also informed the police of Latesky's involvement in the armed robbery at the BP Quick Save station and in several home invasions.  Consequently, the police conducted a search of Pratt's and Latesky's shared trailer home.  Several items were seized, including a toy pistol, a pair of black gloves, sunglasses, and a black knit cap/mask.  Police  investigation of the crime scene also revealed a fresh set of tire tracks in the snow near the gas station.  The tracks indicated that a person had exited the passenger door of a stopped vehicle and walked toward the front of the gas station.  These tracks were the only fresh tracks near the gas station other than the tracks created by the police and store manager after the crime.  The police believed that a person exited the vehicle, walked to into the gas station to commit the crime, and then was picked up under the pavilion by the driver of the vehicle.

Daniel Latesky,  who had previously plead guilty to committing the armed robbery, was called by the prosecution to testify.  Before he did so, the trial court informed the jury that he was a prisoner of the State of Michigan.  Without objection from defense counsel, Latesky was brought into the courtroom wearing a custodial uniform and shackles to testify in front of the jury.  Latesky acknowledged that he was currently in prison and serving a sentence for the armed robbery at the

BP Quick Save.  Throughout his testimony, Latesky maintained that Pratt had not been involved in the robbery and that he alone had committed the crime.  Latesky recounted the circumstances of the crime, including the initial problems Ms. Phillips had opening the cash register because she was printing her shift report.  Contrary to Ms. Phillips' testimony, Latesky testified that the gun was in his right pocket when he entered the store and that when he produced the gun from his pocket, he held it in his right hand.  He stated that he had been wearing a brown and black greasy, hooded Carhartt coat, blue jeans, and white tennis shoes.  Latesky also stated he used a gun, purplish-black polyester gloves, black sunglasses with red, orange, and yellow flames on the sides, and a black ski mask which exposed his eyes, nose, and mouth during the robbery.  Latesky admitted that when police officers questioned him about Pratt's involvement in the crime, he told them he was willing "to take a bullet" for her.

Latesky's stepfather, Howard Hayes, testified for the defense at trial.  He stated that Latesky had come to his house shortly after the robbery and confessed to committing the crime.  Hayes further testified that Latesky had told him that Pratt was home sleeping when the robbery occurred.

At the close of trial, the jury found Pratt guilty of armed robbery.  The trial court subsequently sentenced her to four years and three months to 15 years imprisonment on that conviction.

Pratt, through counsel, filed an appeal as of right with the Michigan Court of Appeals raising the same claims contained in the present petition.  The court affirmed her conviction and sentence in a per curiam decision.  *People v. Pratt*, No. 261045, 2006 WL 3017802 (Mich. Ct. App. Oct. 24, 2006) (unpublished).  Pratt also filed an application for leave to appeal in the Michigan Supreme Court, which was denied.  *People v. Pratt*, 477 Mich. 1057, 728 N.W.2d 449 (2007).

Pratt thereafter filed the present petition, raising the following claims:

I.      Was the Defendant's due process right to be convicted only on the basis of legally sufficient evidence violated when the evidence presented at trial did not support her conviction of armed robbery?

II.     Did the trial court err in allowing Mr. Latesky, a witness whose testimony was favorable to the defendant, to be escorted into the courtroom by deputies and to testify wearing shackles and a custodial uniform, causing substantial prejudice to Ms. Pratt's defense and denying her of her constitutional right to a fair trial?

III.    Did Defendant-Petitioner receive the effective assistance of counsel at trial where counsel failed to object to a favorable witness to the defense being required to testify in front of the Defendant's jury in shackles and jail garb at, which was unduly prejudicial?

Respondent has filed an answer to the petition contending that it should be denied. Pratt was paroled on June 25, 2008, several months after filing her habeas petition. Her parole discharge date is June 25, 2010.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this habeas corpus case because Petitioner filed her petition after AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). 28 U.S.C. § 2254(d), as amended by AEDPA, "circumscribe[s]" the standard of review federal courts must use when considering an application for a writ of habeas corpus. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  Under the "unreasonable application" prong of the statute, "a federal habeas court [may] 'grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of [the] petitioner's case."  *Wiggins*, 539 U.S. at 520 (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  In order for the "state court's application of [Supreme Court] precedent [to be] 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 535 U.S. at 520-21 (citations omitted); *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  In applying these prongs of section 2254(d), "AEDPA does not require a federal court to adopt any one methodology . . . ."  *Id*. at 71.

Section 2254(d)(1)'s "clearly established Federal law," "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams,* 529 U.S. at 412); *see also Lockyer*, 538 U.S. at 71-72.  While lower federal court decisions do not make a legal principle "clearly established Federal law" for the purposes of section 2254(d)(1), they do provide useful insight on the reasonableness of the state court's treatment of an issue.  *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003).  Additionally, for the purposes of section 2254(d)(1), a state court is not

6

required to cite Supreme Court cases, nor is a state court "even require[d to have] awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). Thus, a state court's decision is not necessarily "contrary to" or "an unreasonable application of" clearly established federal law simply because the court failed to cite Supreme Court opinions. *Mitchell*, 540 U.S. at 16.

Finally, a habeas court must presume state court determinations of factual issues to be correct. *See* 28 U.S.C. §2254(e)(1); *see also Lordi v. Ishee*, 384 F.3d 189, 193-94 (6th Cir. 2004). The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Id.*

## IV.   Discussion

### A.   Sufficiency of Evidence

Pratt first asserts that she is entitled to habeas relief because the prosecution failed to present sufficient evidence to support her armed robbery conviction. Specifically, Pratt claims that the prosecution failed to prove beyond a reasonable doubt that she was the person who committed the armed robbery. Respondent contends that this claim is without merit.

The Michigan Court of Appeals denied relief on this claim, finding that the prosecution presented sufficient evidence to establish that Pratt was one of the perpetrators. The court explained:

> In the present case, the victim of the robbery testified that the assailant had green eyes and estimated that the assailant was between 5'5" and 5'6" and had a slender build and small hands. There was evidence that defendant weighed about one hundred pounds, was 5'6" tall, and had green eyes. In contrast, the victim testified that defendant's boyfriend Daniel Latesky, who testified at trial that he alone committed the robbery, could not have been the assailant because of his height, weight, and eye color. The victim also testified that the person who robbed her held the gun in the left hand. Trial testimony established that defendant is left-handed as

7

opposed to Latesky, who is right-handed. Hence, the victim's description of the robber was consistent with defendant.

Furthermore, the victim testified that the robber wore a gray-hooded sweatshirt with the hood up and fully zipped, wore black gloves, had a small black gun and a bright orange hunting mask. Testimony established that a toy gun, a pair of black gloves, a black knit cap/mask and a pair of sunglasses were found underneath a trashcan behind the home shared by defendant and Latesky a few weeks after the robbery. The victim stated that the gloves and toy gun were consistent with the ones used by the robber. In addition, defendant admitted that she owned a gray-hooded sweatshirt, which did not fit Latesky. In contrast, Latesky testified that, when he allegedly robbed the station, he was wearing a brown and black coat. Latesky also testified that the items recovered from underneath the garbage can were the items he used in the robbery. Latesky further described details of the crime that could only be known to the perpetrator of the robbery. Finally, there was evidence that the robber was accompanied by a second person, who remained outside the station.

Taking this evidence in a light most favorable to the people, there was sufficient evidence to establish beyond a reasonable doubt that defendant was the robber. A reasonable jury could conclude from the evidence that two persons participated in the robbery; one who entered the station with the gun and another who remained in the car used to leave the scene. Given Latesky's testimony, his knowledge of details peculiar to the crime and the recovery of the items found under the trashcan behind defendant's home, a reasonable jury could conclude that Latesky was one of those two individuals. Furthermore, given the evidence that defendant matched the description of the perpetrator, that defendant owned a sweatshirt that matched the sweatshirt worn by the perpetrator and that Latesky did not match the description of the robber, a reasonable jury could conclude that defendant accompanied Latesky and was the person who actually entered the station and robbed the victim. Although Latesky testified that he robbed the station and that he did so alone, the jury could properly reject this testimony as not credible and conclude that he was lying for defendant. See *People v. McGhee,* 268 Mich.App 600, 624; 709 NW2d 595 (2005) ("Witness credibility and the weight accorded to evidence is a question for the jury, and any conflict in the evidence must be resolved in the prosecution's favor."). Consequently, the prosecution presented sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that defendant was the perpetrator of the robbery.

*Pratt*, 2006 WL 3017802, at *1-2.

The United States Supreme Court has held that the Due Process Clause of the Fourteenth

Amendment requires "proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  In other words, "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof-defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

In determining whether the evidence supporting a conviction is sufficient, a federal habeas court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.  A habeas court must do so "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324.  The trier of fact has the responsibility to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic fact to ultimate facts," and a federal habeas court must defer to the trier of fact's resolution of conflicting evidence and inferences. *Jackson*, 443 U.S. at 319, 326.  Habeas courts are not permitted to redetermine the credibility of witnesses whose demeanor was observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

To convict a defendant of armed robbery under Michigan law, the prosecution must establish the following elements:  (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute.  *See* Mich. Comp. L. § 750.529; *People v. Rodgers*, 248 Mich. App. 702, 707, 645 N.W.2d 294 (2001).   The prosecution must also prove beyond a reasonable doubt that the accused is the person who committed the charged offense.  *See, e.g., People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216, 218 (1967).  In other words, "proof of [the] defendant's connection with the alleged offense is an indispensable element of [the prosecutor's] duty." *Id.*

9

The Michigan Court of Appeals' decision that the prosecution had proven beyond a reasonable doubt that Pratt committed the armed robbery is neither contrary to nor an unreasonable application of federal law or the facts.  The trial testimony showed that Pratt's physical characteristics of height, build, weight, left-handedness, and eye color matched the physical characteristics of the perpetrator as described by the victim, Ms. Phillips.  Pratt also owned a gray-hooded zip-up sweatshirt that did not fit Latesky, and a toy gun and other items believed to have been used in the robbery were found at her and Latesky's residence.  Furthermore, the victim's testimony established that Latesky was not the person who entered the gas station.  Although Latesky confessed to the crime and knew details of the armed robbery, the prosecution presented evidence, including police testimony, which indicated that more than one person was involved.  Viewing the evidence in a light most favorable to the prosecution, the jury could have reasonably determined that Latesky was involved in the armed robbery, but was not the person who actually entered the gas station.  More importantly, the jury could have reasonably concluded that Pratt was the person who entered the gas station and committed the armed robbery given that she fit the physical characteristics and description of the perpetrator; she had a close connection to Latesky, who had pled guilty to the crime and knew specific details of it, but was excluded as the perpetrator by the victim; and items consistent with those used in the commission of the crime were found at their shared residence.

Pratt asserts that sufficient identification did not occur at trial because Ms. Phillips was unable to positively identify her as the perpetrator and was unable to conclusively state whether the perpetrator was a male or female.  However, an eyewitness identification is not required to establish the identity of the perpetrator of a crime.  *See, e.g., Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D.

10

Mich. 2002). Identity may be proven by direct testimony or circumstantial evidence. *Id*. at 647; *Kern*, 6 Mich. App. at 409. Identity may also be established by reasonable inferences arising from the evidence. *Id*.; *People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740, 742 (1985). In this case, the prosecution presented sufficient testimonial and circumstantial evidence from which a reasonable jury could conclude that Pratt committed the armed robbery.

To the extent that Pratt attacks the inferences that the jury drew from the evidence at trial, she is not entitled to relief. Such determinations are not matters for federal habeas review. "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). It is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). "[The] mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003). The Court concludes that the evidence presented at trial was sufficient to allow a rational trier of fact to conclude that Pratt committed the armed robbery. Habeas relief is not warranted on this claim.

## B.     Shackling and Prison Garb of State's Witness

Pratt next asserts that she is entitled to habeas relief because Daniel Latesky testified while wearing shackles and prison garb, thereby prejudicing her defense. Respondent contends that this claim is barred by Pratt's state court procedural default and, alternatively, that allowing the witness to appear as he did was within the state trial court's discretion.

The Michigan Court of Appeals denied relief on this claim, finding that the issue was

11

unpreserved and that the trial court did not commit plain error. The court stated:

> Generally, a party must object to an error at the trial court level in order to preserve the issue for appeal. *People v. Carter,* 462 Mich. 206, 214; 612 NW2d 144 (2000). Defendant concedes that her defense counsel did not object to the witness testifying in prison garb and shackles, so this issue is not preserved. *People v. Grant,* 445 Mich. 535, 546; 520 NW2d 123 (1994). Review of this unpreserved claim of error is limited to review for plain error affecting defendant's substantial rights. Reversal is warranted only if plain, unpreserved error resulted in the conviction of an actually innocent person, or seriously affected the fairness or integrity of the proceedings. *People v. Jones,* 468 Mich. 345, 355-356; 662 NW2d 376 (2003).
>
> Defendant argues that her conviction should be reversed because neither the trial court nor plaintiff provided any basis on the record for shackling Latesky. Defendant relies on *People v. Banks,* 249 Mich App 247, 257; 642 NW2d 351 (2002), which held that "the handcuffing or shackling of a witness during trial should be permitted only to prevent the escape of the witness, to prevent the witness from injuring others in the courtroom, or to maintain an orderly trial." However, the Court in *Banks* did not hold that it would be error for a trial court to permit a witness to be shackled without sua sponte articulating a proper reason. Instead, the decision is committed to the discretion of the trial court. *See Banks, supra* at 256-257. Because defendant never objected below and no record was developed as to why Latesky was shackled, it is not readily apparent that there was not a proper basis for the trial court's decision. Therefore, we cannot conclude that the trial court committed plain error.

*Pratt*, 2006 WL 3017802, at *2.

As noted, Respondent contends that this claim is barred by procedural default. This Court, however, need not address the procedural default issue because the claim can be easily decided on the merits. Federal courts "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also* 28 U.S.C. § 2254(b)(2) (providing that a habeas petition may be denied on the merits despite the petitioner's failure to exhaust state court remedies). The Court will therefore proceed to the merits of this claim.

The United States Supreme Court has recognized that due process precludes a defendant from being compelled to stand trial in jail or prison garb as long as the defendant has made a timely

objection. *See Estelle v. Williams*, 425 U.S. 501, 512 (1976).  Compelling a defendant to do so impairs the presumption of innocence guaranteed under the Fourteenth Amendment because it presents the unacceptable risk of affecting a juror's judgment and furthers no essential state policy. *Id*. at 503-05.  It is only a state's compulsion that is prohibited and not the wearing of prison garb in general because defendants sometimes use prison garb as a tactic to elicit sympathy from the jury. *Id*. at 508.  The Supreme Court has similarly recognized that due process precludes the use of visible physical restraints upon a defendant "absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005) (citing *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986); *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970)).  Shackles may be used upon a defendant at the trial court's discretion to prevent escape, for security in the courtroom, and to maintain order during trial.  *See, e.g., Kennedy v. Cardwell*, 487 F.2d 101, 105 -07 (6th Cir. 1973).

The Supreme Court, however, has never ruled that the prohibition on compelling a defendant to wear prison garb or appear in shackles applies to witnesses.  Moreover, an extension of the prohibition does not inevitably follow from the reasoning of the aforementioned Supreme Court decisions.  The Supreme Court in *Deck* and *Estelle* reasoned that the principal interest protected by the Due Process Clause is the presumption of innocence accorded criminal defendants, a presumption that is undercut when the defendant must stand before jurors wearing prison garb or shackles.  *See Deck*, 544 U.S. at 630; *Estelle*, 425 U.S. at 503.  That presumption is inapplicable to witnesses in that defendants are not entitled to a presumption that their witnesses are innocent. Accordingly, the Michigan Court of Appeals' denial of relief on this claim is neither contrary to nor an unreasonable application of Supreme Court precedent.  Simply put, the Supreme Court has never

13

held that the constitution prohibits a witness from being compelled to testify in prison garb or visible physical restraints. *See Torrez v. McKee*, 601 F. Supp. 2d 920, 949 (W.D. Mich. 2009) (denying habeas relief on similar claim due to lack of Supreme Court precedent); *accord Saenz v. Marshall*, 990 F.2d 1260, 1993 WL 98806, *1 (9th Cir. 1993) (unpublished). Because the Supreme Court has never established that a criminal defendant has a constitutional right to prevent a witness from being compelled to testify in prison garb or shackles, habeas relief is not warranted on this claim.

Alternatively, the Court notes that some federal courts have indicated that the prohibition on compelling a defendant to appear for trial in prison garb or shackles applies to witnesses, reasoning that such clothing or restraints may improperly influence the jury's credibility determination. *See, e.g., Kennedy*, 487 F.2d at 105 n. 1 (in dicta); *Harrell v. Israel*, 672 F.2d 632, 635 (7th Cir. 1982). Assuming that such an extension is justified under Supreme Court precedent, Pratt is still not entitled to relief. Under *Estelle*, a defendant must object to prison clothes or shackles in order to establish compulsion. *See Estelle*, 425 U.S. at 512-13 (ruling that "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation"); *see also United States v. Garcia*, 259 Fed. Appx. 747, 753 (6th Cir. 2008) ("it is uncontested that the defendant made no objection and, therefore, there is no constitutional violation"). In this case, Pratt did not object to witness Latesky's appearance in prison garb or the use of shackles. Accordingly, she cannot establish a violation of her constitutional rights.

Nonetheless, even if Latesky's appearance before the jury in prison garb and shackles rose to the level of a constitutional violation, such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have

14

a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Harmless error analysis has been applied to claims involving the use of prison clothing and shackles. *See Lakin v. Stine*, 431 F.3d 959, 966 (6th Cir. 2005) (citing Supreme Court cases); *accord United States v. Martin*, 964 F.2d 714, 721 (7th Cir. 1992). Latesky's wearing of prison garb or shackles did not prejudice Pratt nor have a substantial affect or influence on the jury's verdict. The trial court informed the jury that Latesky was a state prisoner and Latesky testified about his armed robbery conviction and prisoner status. "No prejudice can result from seeing that which is already known." *United States ex rel. Stahl v. Henderson*, 472 F.2d 556, 557 (5th Cir. 1973); *see also United States v. Brooks*, 125 F.3d 484, 499 (7th Cir. 1997) (witness's testimony about her convictions and prisoner status dispelled any prejudice arising from her prison garb); *United States v. Adams* 1 F.3d 1566, 1584 (11th Cir. 1993) (citing cases and finding no prejudicial error arising from co-defendants testifying in prison clothes); *Holloway v. Alexander*, 957 F.2d 529, 530 (8th Cir. 1992); *Johnson v. Spalding*, 510 F. Supp. 164, 171 (E.D. Wash. 1981). Additionally, the jury was well aware of Latesky's relationship with Pratt and other factors affecting his credibility. Any error in having Latesky appear in prison garb and shackles was harmless beyond a reasonable doubt. Habeas relief is not warranted on this claim.

### C.    Ineffective Assistance of Counsel Claim

Lastly, Pratt asserts that she is entitled to habeas relief because trial counsel was ineffective for failing to object to Daniel Latesky's appearance before the jury in prison garb and shackles. Respondent contends that this claim lacks merit.

The Michigan Court of Appeals denied relief on this claim, finding that Pratt failed to overcome the strong presumption that counsel's decision was a matter of sound trial strategy:

> To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and that it is reasonably probable that but for counsel's errors, the result of the proceeding would have been different. *People v. Rodgers,* 248 Mich.App 702, 714; 645 NW2d 294 (2001). "[D]efendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v.. Riley,* 468 Mich. 135, 140; 659 NW2d 611 (2003). The defense's theory was that reasonable doubt existed as to defendant's guilt because Latesky claimed that he committed the robbery alone. Defendant has not overcome the presumption that her trial counsel's decision was a matter of sound trial strategy. Defendant's trial counsel may well have declined to object because of a desire to emphasize that Latesky had been incarcerated for the robbery and was, therefore, the more likely perpetrator of the robbery. Consequently, there was no error warranting reversal.

*Pratt*, 2006 WL 3017802, at *3.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" to prove the deficient performance. *Id.* at 690. A habeas court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

16

would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

The Michigan Court of Appeals's denial of relief on this claim is neither contrary to nor an unreasonable application of federal law or the facts. Pratt has not shown that defense counsel's performance was deficient. Counsel may have reasonably determined that allowing prosecution Laskey to appear in prison garb and shackles would benefit the defense. Although part of Latesky's testimony was favorable to Pratt, some of his testimony was also favorable to the prosecution. Latesky's appearance and testimony are issues that cut both ways, and the Court must presume defense counsel made a reasoned judgment call. By not objecting to Latesky's appearance in prison garb and shackles, defense counsel may have been attempting to emphasize to the jury that Laskey was responsible for the armed robbery and had already been convicted and punished for that offense. Counsel's decision is presumed to be sound trial strategy and Pratt has not rebutted this presumption. Pratt has failed to show that counsel's performance was deficient.

Pratt has also failed to establish that she was prejudiced by counsel's conduct. She has not shown that there was a reasonable probability that the jurors would have decided her case differently had Latesky appeared in plain clothes without shackles. As noted, the jury was well aware that Latesky was a prisoner and that he had been convicted of the armed robbery. Pratt has failed to establish that counsel erred and/or that she was prejudiced by counsel's conduct under the *Strickland* standard. Habeas relief is not warranted on this claim.

17

**V.      Conclusion**

For the reasons stated, this Court concludes that the petitioner is not entitled to habeas relief

on the claims contained in her petition.  Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED** and **DISMISSED**

**WITH PREJUDICE.**

Dated:  August 26, 2009

<div style="margin-left:40%">
S/George Caram Steeh_____
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE
</div>

<div style="border:1px solid black; padding:10px; width:50%; margin:auto; text-align:center">

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 26, 2009, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

</div>